**Richard B. SCHIRO, Appellant,**

v.

**TEXAS COMMUNITY BANK, N.A., Appellee.**

No. 05–00–00238–CV.

Court of Appeals of Texas, Dallas.

May 4, 2001.

Richard B. Schiro, Law Office of Richard B. Schiro, Dallas, for appellant.

D. Woodard Glenn, Dallas, for appellee.

Before Justices WHITTINGTON, BRIDGES, and ROACH.

## OPINION

Opinion By Justice BRIDGES.

Richard B. Schiro appeals the trial court's summary judgment in favor of Texas Community Bank, N.A. In two points of error, Schiro argues the trial court erred in denying his motion for summary judgment and granting the Bank's motion. We affirm the trial court's judgment.

Schiro maintained a checking account with the Bank. The signature card for the account showed the actual signature of Richard B. Schiro as the sole authorized signature for withdrawals. From February 1992 until July 1995, Schiro employed Richard M. King as his bookkeeper. On July 14, 1995, Judy Adams, a Bank employee, called Schiro and inquired about his use of a signature stamp on checks drawn on the account. Schiro informed Adams he had never used or authorized a signature stamp, and Adams told him she had a check bearing Schiro's stamped signature payable to King in the amount of $7,985.76. The check was not paid, and Schiro and the Bank agreed to procedures for the Bank to review and consult with Schiro on all checks subsequently presented for payment. Schiro left enough money in the account to pay valid outstanding checks, closed the account, and opened a new account. Thereafter, Schiro investigated whether King had forged other checks and requested copies of statements and checks he believed were forged. The parties stipulated, however, that Schiro did not give notice to the Bank of his unauthorized signature on the specific items in question until April 1997. On April 30, 1997, Schiro's attorney sent a demand letter to the Bank listing the forged checks discovered in the investigation and demanding payment of $90,462.06. The Bank did not pay, and Schiro filed suit, alleging breach of contract, negligence, breach of the duty of good faith and fair dealing, and breach of warranty causes of action against the Bank. A jury trial resulted in a verdict in favor of Schiro, but the trial court subsequently granted the Bank's motion for new trial. Thereafter, both parties filed motions for summary judgment. After considering the motions, the trial court denied Schiro's motion and granted the Bank's motion on the ground that Schiro did not provide notice of the forged checks in conformity with section 4.406(d) of the Texas Business and Commerce Code. This appeal followed.

In two points of error, Schiro argues the trial court erred in denying his motion for summary judgment and granting the Bank's motion for summary judgment. The standard of review for a summary judgment is well established: (i) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law; (ii) in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (iii) every inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show that the plaintiff has no cause of action by

either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *See Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990).

Bank customers have a duty to discover and report unauthorized signatures on their accounts. *See* TEX. BUS. & COM.CODE ANN. § 4.406 (Vernon Supp.2001). Under section 4.406(a), a bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available the items paid or provide information in the statement sufficient to allow the customer to identify the items paid. *See id.* § 4.406(a). If a bank sends or makes available a statement of account under section 4.406(a), the customer must exercise reasonable promptness in examining the statement to determine whether any payment was not authorized because of alteration or an unauthorized signature. *See id.* § 4.406(c). If, based on the statement, the customer should reasonably have discovered the unauthorized payment, he must promptly notify the bank of the relevant facts. *Id.*

If the bank proves that the customer failed to comply with the duties imposed by section 4.406(c), the customer is precluded from asserting against the bank: (1) the customer's unauthorized signature and (2) the customer's unauthorized signature by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice of the unauthorized signature and after the customer had a reasonable time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank. *Id.* § 4.406(d). Without regard to the care or lack of care of either the customer or the bank, a cus-

tomer who does not discover and report the unauthorized signature within one year after the statement or items are made available is precluded from asserting the unauthorized signature. *Id.* § 4.406(f).

■ In this case, Schiro told the Bank on July 14, 1995 that a signature stamp was not authorized on his account. However, as Schiro stipulated, he did not notify the Bank of his unauthorized signature on the specific items in question until April 1997. We conclude that, because Schiro did not report the unauthorized signature on the specific items in question within one year, he is precluded from asserting the unauthorized signature, without regard to the care or lack of care of either Schiro or the Bank. *See id.* § 4.406(f). Nevertheless, Schiro argues he provided the less-specific notice required by his account agreement with the Bank, and he is therefore not precluded from asserting negligence and breach of contract claims under the agreement.

The account agreement provides, in part:

STATEMENTS—If you do not notify us of an unauthorized signature or alteration within a reasonable time (not to exceed 14 days) after we send or make available to you your statement and items: (1) you cannot assert the unauthorized signature or alteration against us, even if we are unable to show a loss due to your failure and, (2) you cannot assert any unauthorized signatures or alterations by the same wrongdoer on items paid by us after the reasonable time mentioned above elapses, but before we receive your notice. We lose these protections if we fail to exercise ordinary care in paying an item with an unauthorized signature or alteration, unless you do not notify us of the problem within 60 days of when we send or make available to you the statement and

items. You must also report any other account problem (e.g. erroneous statement or passbook entry, missing signature, unauthorized endorsement, etc.) within this 60–day period or lose your right to assert the problem against us.

Relying on this provision of the account agreement, Schiro argues his notice to the Bank of the unauthorized signature on the $7,985.76 check on July 14, 1995 was notice of "the problem" involving the unauthorized signature. Schiro argues that, because he provided notice under the account agreement, and the Bank failed to exercise ordinary care, nothing bars him from recovering under his breach of contract cause of action for checks improperly paid during the year prior to July 14, 1995, pursuant to section 4.406(d). *See id.* § 4.406(d). As support for his argument that he gave notice as required by the account agreement, Schiro quotes the parties' stipulation that Schiro gave notice to the Bank "beginning July 14, 1995, of his unauthorized signature on the account in question." At a minimum, Schiro argues, the Bank is liable for all forged checks wrongfully paid in the sixty days prior to July 14, 1995. We disagree.

The record reflects, and the parties stipulated, that Schiro gave notice of his unauthorized signature on the account in question beginning July 14, 1995. However, the notice he gave on July 14, 1995, was notice of the single $7,985.76 check. The record reflects that, even though the Bank may have been aware of the possibility of other unauthorized checks after July 14, 1995, Schiro did not provide notice of his unauthorized signature on the specific items in question until April 1997. We construe the account agreement's sixty-day notice requirement as requiring notice of "an item with an unauthorized signature or alteration," not notice that such items might possibly exist. In this case, the Bank did not pay the $7,985.76 check, and

Schiro did not notify the Bank of any other unauthorized check until nearly two years later. Under these circumstances, we conclude Schiro failed to give timely notice under either the account agreement or section 4.406. Accordingly, the trial court did not err in granting the Bank's motion for summary judgment and denying Schiro's motion for summary judgment. *See Nixon,* 690 S.W.2d at 548–49. We overrule Schiro's first and second points of error.

We affirm the trial court's judgment.