**AFFIRM; and Opinion Filed January 22, 2018.**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00472-CV

### ROBBIE LESA HAMES HORTON, Appellant
### V.
### JP MORGAN CHASE BANK, N.A., AND KIMBERLY A. STOVALL, Appellees

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-14-01162-E**

# MEMORANDUM OPINION
Before Justices Lang-Miers, Brown, and Boatright
Opinion by Justice Boatright

Appellant Robbie Lesa Hames Horton (Hames) sued her bank, appellee JP Morgan Chase Bank, N.A. (Chase), based on allegations that Chase converted Hames's individual account to a joint account without her consent and thereafter permitted the purported co-owner of the account to make an unauthorized withdrawal of all of the account's funds. The trial court rendered summary judgment in favor of Chase, which Hames has appealed. We affirm.

## BACKGROUND

Hames opened the subject account, an individual checking account, by a signature card dated September 14, 2011. By her signature, Hames acknowledged receipt of Chase's "Account Rules and Regulations" (Account Terms, or Terms) and "agree[d] to be bound by the terms and conditions contained therein[,] as amended from time to time."

Hames was employed as a paralegal for the law firm of Stovall & Associates, P.C. Hames's paychecks were directly deposited into the subject account. On November 14, 2011, Chase received a second signature card that purported to convert the subject account to a joint account with right of survivorship. The signature card was purportedly signed by Hames and by Kimberly Stovall (of the Stovall firm) as co-owners of the joint account. However, Hames denies that she signed the second signature card or that she authorized any modification of the subject account. Stovall also denies that she signed the second signature card or that she was at that time aware of the subject account.

Chase mailed monthly statements for the account. The first two statements (for the months of September and October of 2011) were addressed solely to Hames at her place of employment, the Stovall firm. Subsequent to Chase's receipt of the second signature card, it sent account statements addressed to Hames and to Stovall at the Stovall firm.

On July 23, 2012, Stovall terminated Hames's employment at the firm. On the same day, Stovall withdrew all of the funds from the subject account, which totaled over $345,000. Hames did not consent to this withdrawal. Presumably at Stovall's request, Chase also removed Hames from the subject account.

Hames sued Chase in 2014 and asserted claims for breach of contract, negligence, and conversion—all premised on the unauthorized withdrawal of the funds from, and her removal from, the subject account. Chase filed a motion for summary judgment that asserted, among other grounds, that Hames's claims were barred under the Account Terms and under the Texas Uniform Commercial Code (UCC) because Hames did not timely notify Chase of any errors in her monthly account statements or of the unauthorized withdrawal. The trial court granted Chase's summary-judgment motion without stating the grounds for the court's ruling. Hames filed a motion for new trial, which the trial court denied by an interlocutory order. The court's orders were made final by

a take-nothing judgment against Hames that the court rendered on April 7, 2016.[1] This appeal followed.

## TRADITIONAL SUMMARY JUDGMENT

Chase's summary-judgment motion asserted both traditional and no-evidence grounds. Hames's first three issues challenge Chase's traditional grounds. Although we usually address a no-evidence motion first when both no-evidence and traditional summary-judgment motions are filed, here we will first review the propriety of granting Hames's traditional motion because this motion is dispositive of all of her claims. *See Reynolds v Murphy*, 188 S.W.3d 252, 258 (Tex. App.—Fort Worth 2006, pet. denied) (reviewing traditional motion first under similar circumstances).

**Timeliness of Notice**

Chase's traditional motion urged that all of Hames's claims were barred under the Account Terms and under the UCC because Hames did not give timely notice to Chase of the purported errors regarding the subject account. Hames's second issue contends that her claims were not so barred. Our resolution of this issue is dispositive of this appeal, though we will also consider Hames's third and fourth issues, which challenge alternative summary-judgment grounds asserted by Chase against Hames's negligence and conversion claims.[2]

We begin by examining the statutory provisions relevant to our analysis. Article 4 of the UCC establishes the rights and duties of banks and their customers regarding deposits and collections. *Am. Airlines Emps. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 91 (Tex. 2000).

---

[1] The judgment also granted Chase's motion to nonsuit its counterclaim against Hames and its third-party claims against Stovall. Stovall is listed as an appellee in this appeal notwithstanding that she was nonsuited in the underlying litigation.

[2] Hames's first issue contends that the trial court "erred in finding the creation of a joint account . . . when such an account cannot be created without [a] written agreement reflecting the knowledge and consent of the holders of that account." We need not reach this issue because, even assuming that no joint account was actually established here, summary judgment was proper against Hames's claims because she failed to comply with the Account Terms' notice requirements, as discussed below.

Section 4.401 provides that a bank can only charge against a customer's account "an item that is properly payable." TEX. BUS. & COMM. CODE ANN. § 4.401(a) (West 2002). To be properly payable, an item must be "authorized by the customer and . . . in accordance with any agreement between the customer and the bank." *Id.* A bank is liable to its customer if it charges the customer's account for an item that is not properly payable from the account. *Martin*, 29 S.W.3d at 91.

Section 4.406 imposes corresponding obligations on the customer and provides the bank with certain defenses should the customer fail to comply with its obligations. To summarize, if a bank sends or makes available to the customer an account statement that reasonably identifies the items paid, the customer must exercise reasonable promptness in examining the statement and must promptly notify the bank of the relevant facts regarding any unauthorized payments due to the alteration of an item or an unauthorized signature. TEX. BUS. & COMM. CODE ANN. § 4.406(a), (c) (West 2002). If the bank proves that the customer failed to provide the requisite notice within a reasonable period of time, the customer is precluded from asserting the unauthorized signature or alteration, to the extent the bank suffered a loss by reason of the customer's failure. *Id.* § 4.406 (c), (d)(1). Also, if the customer has been afforded a reasonable period of time, not to exceed 30 days, to examine her account statements, the customer is thereafter precluded from asserting an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank before the bank received notice from the customer. *Id.* § (d)(2). However, if the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure contributed to the loss, such loss is allocated between the bank and the customer according to their comparative fault. *Id.* § (e). The foregoing defenses for the bank also do not apply to the extent the customer proves that the bank did not pay the item in good faith. *Id.* Finally, a customer's claim is absolutely barred if she fails to provide the requisite notice within one year. *Id.* § 4.406(f); *see Fed.*

*Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 608–09 (Tex. 2012) (concluding that Section 4.406(f) is a statute of repose).

The parties' obligations under Article 4 may be varied by their agreement, except for disclaimers of a lack of good faith, a failure to exercise ordinary care, or the measure of damages for such lack or failure. TEX. BUS. & COMM. CODE ANN. § 4.103(a) (West 2002); *Martin*, 29 S.W.3d at 95. The Account Terms required Hames to review each monthly account statement and to notify Chase in writing—within 30 days of when the statement was mailed or otherwise made available—of any unauthorized items or errors that Hames identified in the statement. The Terms precluded Hames from asserting a claim relating to an unauthorized item or error for which she failed to provide the requisite notice. The Texas Supreme Court upheld similar terms in *Martin*, in which the court concluded that a sixty-day notice provision in a deposit agreement was enforceable. 29 S.W.3d at 96–97.

*Chase's Motion*

A party moving for a traditional summary judgment must show that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). We review a challenge to a traditional summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Chase's motion attached evidence including (i) an affidavit of one of its district managers, Jeff Johnson; (ii) the signature cards and withdrawal slip at issue; (iii) the Account Terms; (iv) the monthly account statements for the subject account; (v) Hames's original and amended petitions; (vi) Hames's deposition testimony and written discovery responses; and (vii) Stovall's written discovery responses. This evidence demonstrates that Hames did not timely notify Chase in writing of the purported errors regarding the subject account, as was required by the Account Terms.

Specifically, the Johnson affidavit stated that Chase routinely mailed monthly account statements to its customers within six business days of the end date reflected on the statement. Johnson additionally averred that Chase's online banking interface permitted customers to view their account statements as well as images of items drawn on their account. Each of the monthly statements for the period November 5, 2011 through July 6, 2012—including the first such statement dated December 6, 2011—listed both Hames and Stovall as addressees on the first page of the statement. Hames admitted in her deposition that she received the monthly statements and that she subsequently obtained duplicate copies of the statements during a September 2012 in-person visit to a Chase branch bank.

Chase's evidence also demonstrates that, notwithstanding Hames's receipt of these statements, she did not notify Chase in writing of any errors regarding the subject account until (i) her original petition filed in March of 2014, in which she alleged that Chase breached the account agreement by permitting the subject withdrawal, and (ii) her amended petition filed in August of 2014, in which she alleged for the first time that Chase had converted the subject account from an individual account to a joint account without her knowledge and consent. In sum, while the Account Terms required 30 days' written notice of any errors in the monthly statements, Hames did not give Chase such notice until her petitions in the underlying lawsuit, which were filed long after the 30-day deadline had passed. This court and others have upheld summary judgments rendered for banks in analogous circumstances. *See Schiro v. Texas Community Bank, N.A.*, 68 S.W.3d 55, 57–58 (Tex. App.—Dallas 2001, no pet.) (concluding that plaintiff failed to give timely notice under either account agreement or under Section 4.406); *Canfield v. Bank One, Texas, N.A.*, 51 S.W.3d 828, 837 (Tex. App.—Texarkana 2001, pet. denied) (concluding that plaintiff failed to give timely notice under Section 4.406(d), which had been contractually shortened by deposit agreement).

*Hames's Response*

Hames disputes that the 30-day written-notice requirement applies here, and she further contends that she provided the requisite notice in any event. Her summary-judgment response attached evidence including (i) the signature cards at issue and the withdrawal slip for the subject withdrawal; (ii) her handwritten notes from oral conversations with Chase; (iii) a September 2012 "Customer Summary" prepared by Chase; (iv) an unsworn declaration that she signed; and (v) Stovall's written discovery responses. We will consider each of Hames's arguments in turn.

As an initial matter, Hames denied in her declaration that she was ever given the Account Terms, and she contends on appeal that Chase offered no proof of delivery. Even assuming that Hames was not given the Terms, she does not dispute that she expressly agreed to be bound by them, as evidenced by the September 2011 signature card that she signed in connection with opening the subject account. *See Martin*, 29 S.W.3d at 96 ("[S]ignature cards establish a contract between [the] banking institution and customer, regardless of whether the customer reads all the provisions to which he is agreeing."). Accordingly, whether Hames actually received a copy of the Terms is of no significance here.

Hames also disputes that the Terms required 30 days' written notice in this case. She refers to a provision in the Terms that permits 60 days' telephone notice with respect to errors related to electronic transfers, and to a provision that permits telephone notice with respect to bank cards, PIN numbers, or codes that have been lost or stolen. Neither of these provisions applies here. It is undisputed that Stovall executed the subject withdrawal by signing a paper withdrawal slip, not an electronic transfer, and this case does not arise from a lost or stolen bank card.

In addition, Hames contends that Chase's inclusion of Stovall as an addressee on the monthly statements was insufficient to give rise to a corresponding obligation requiring Hames to notify Chase that Stovall was not a joint owner of the subject account. Related to this point, Hames

averred in her declaration, and also testified in her deposition, that she did not see any change on her account statements. We disagree with Hames's contention that she had no notice obligation here. The inclusion of Stovall on each statement evidenced that she had been added to the account, thereby triggering an obligation by Hames under the Account Terms to notify Chase in writing that Stovall should not have been so added.

Moreover, Hames relies on evidence that she gave oral notice on several occasions, beginning on the date of the subject withdrawal, July 23, 2012, of the errors regarding her account. She contends that Chase documented this notice in its computer system, which in her view satisfied the Account Terms' written-notice requirement. She also contends that the summary-judgment evidence raises a fact issue regarding Chase's actual notice that precludes the rendition of summary judgment against her. She cites to case law in which Texas courts have held that actual notice can satisfy a written notice requirement.[3]

Hames's declaration states that she placed a telephone call to Chase on July 23— immediately upon learning that Stovall had withdrawn the funds from the subject account—and was given a telephone number for filing a complaint with Chase's claims department. She avers that she called the claims department and filed a report, and her claim was assigned an investigation number. She also points to the Customer Summary prepared by Chase, following her in-person visit to a Chase branch bank on September 19, 2012, which referenced the "ongoing" investigation regarding her removal from the subject account. This evidence fails to demonstrate compliance with the Account Terms' requirement that Hames herself provide written notice to Chase of any unauthorized items or errors regarding her account. Moreover, the addition of Stovall to the account was the purported error that led to the July 23 withdrawal, and it is undisputed that Chase

---

[3] *See, e.g.*, *Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674–75 (Tex. 1987) (holding that foreclosure prerequisites under deed-of-trust requiring that lender mail notice to borrowers of their right to reinstate after acceleration, or to bring a lawsuit, were satisfied by borrowers' actual notice of such rights); *DeAnda v. Home Ins. Co.*, 618 S.W.2d 529, 532–33 (Tex. 1980) (concluding that statutory notice requirement under former workers' compensation statute could be met when employer or insurer had actual knowledge of employee's injury).

was not given notice of this error until over seven months after it had begun sending monthly statements to Hames that reflected the error. In conclusion, Chase's actual notice on July 23 did not satisfy the Account Terms' requirement that Hames provide written notice within 30 days of any unauthorized items or errors.

For the foregoing reasons, summary judgment was proper against each of Hames's claims. We overrule her second issue.

**Economic Loss Rule**

Hames's third issue challenges Chase's alternative ground that her negligence claim is barred by the economic loss rule. This rule "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). Hames contends that the economic loss rule is limited to specific categories of cases that she claims are inapplicable here—cases involving strict products liability, cases in which a general contractor seeks damages from a design professional, and cases in which the plaintiff's claims are limited to contract remedies. She characterizes her negligence claim as premised on Section 4.406 of the UCC, TEX. BUS. & COMM. CODE ANN. § 4.406, and she urges that the economic loss rule does not apply to such a claim. Hames also argues that the rule does not apply because (i) Chase breached a duty independent of its contractual obligations, and (ii) her loss—in the form of the unauthorized withdrawal—was more than an economic loss. We disagree with Hames's contentions. While the economic loss rule does not bar all tort claims arising out of a contractual setting, *Chapman Custom Homes*, 445 S.W.3d at 718, we conclude that the rule applies here.

Our analysis hinges on whether "the duty allegedly breached is independent of the contractual undertaking" and whether "the harm suffered is not merely the economic loss of a

contractual benefit." *Id*. The duties that Chase allegedly breached were dependent on its contract with Hames. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 564–65 (Tex. 1984) (holding that deposit creates an implied agreement that bank will disburse funds only in accordance with depositor's instructions); *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 148 (Tex. App.—Dallas 2013, no pet.) ("The relationship of a bank to a general depositor is contractual, that of debtor-creditor arising from the depository contract."). In addition, the account funds that Hames seeks to recover relate to the subject matter of the contract, and she does not allege an injury independent of the contract. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."). Her negligence claim is therefore barred by the economic loss rule. We overrule Hames's third issue.

## NO-EVIDENCE SUMMARY JUDGMENT

Hames's fourth issue challenges the no-evidence ground that Chase asserted as an alternative basis for the summary judgment against her conversion claim. A no-evidence summary-judgment motion must allege that there is no evidence of at least one essential element of a claim or defense on which the opponent would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The movant must state the elements for which there is no evidence. *Id.* The non-movant must then "produce evidence raising a genuine issue of material fact as to the challenged elements." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

Hames based her conversion claim on the Texas UCC. Section 3.420 of the UCC provides that (i) the law applicable to conversion of personal property applies to instruments, and (ii) an instrument is also converted if it is taken by transfer from a person not entitled to enforce the instrument, or if a bank makes or obtains payment for a person not entitled to enforce the instrument or receive payment. TEX. BUS. & COMM. CODE ANN. § 3.420(a) (West 2002). Chase's

motion urged that Hames's conversion claim required her to prove that Chase acted without "good faith" in authorizing the subject withdrawal—i.e., without "honesty in fact" and absent "the observance of reasonable commercial standards of fair dealing," TEX. BUS. & COMM. CODE ANN. § 1.201(b) (20) (West Supp. 2016)—and that Hames had presented no such evidence.

In support of its position, Chase relies on *Canfield*, which applied Section 4.406 of the UCC. 51 S.W.3d at 832–38. The *Canfield* court upheld a summary judgment for a bank based on the customer's failure to produce evidence of bad faith by the bank that otherwise would have allowed the customer to avoid Section 4.406's limitations requirement. 51 S.W.3d at 837–38. Given Chase's reliance on *Canfield*, we interpret its no-evidence motion as premised on Hames's failure to produce evidence of Chase's lack of good faith as required by subsection (e) of Section 4.406.

In her response to Chase's motion, Hames urged that good faith and reasonable standards are issues for the fact finder to determine. She relied on several UCC provisions to support her position, including (i) Section 3.420(a), which does not reference "good faith," TEX. BUS. & COMM. CODE ANN. § 3.420(a), and (ii) Sections 3.405 and .406, which set forth the rights and liabilities of a person who, in good faith, pays an instrument as against a person whose negligence contributes to a forgery or alteration of the instrument, *id.*, §§ 3.405(b), .406(a), (b) (West 2002). Hames also contends that Chase's lack of good faith is evidenced by its act of changing her individual account to a joint account without her knowledge, and by its processing of the July 2012 withdrawal without recognizing that Stovall's signature on the withdrawal slip purportedly did not match what Hames claims was a forged Stovall signature on the November 2011 signature card.

We must consider the parties' contentions in light of the applicable standard of review. In reviewing a no-evidence motion, we view the evidence presented by the motion and response in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable

jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). "A genuine issue of material fact exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Parker*, 514 S.W.3d at 220 (citation and internal quotation marks omitted). The evidence does not give rise to an issue of material fact "if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Id.* (citation and internal quotation marks omitted).

Upon viewing the evidence in the light most favorable to Hames, we conclude that she failed to produce any evidence that raises a genuine issue of material fact as to Chase's lack of good faith. "The test for good faith . . . is the actual belief of the party in question." *Canfield*, 51 S.W.3d at 837. Stated in the converse, "[b]ad faith implies a conscious wrongdoing due to a dishonest purpose or moral obliquity" and "requires a state of mind that affirmatively acts with furtive design or ill will." *Id.* The record contains no evidence that Chase knew the purported Stovall signature on the November 2011 signature card was forged. Nor is the purported difference between this signature and Stovall's subsequent signature on the July 2012 withdrawal slip sufficient, without more, to raise a fact question that Chase acted with bad faith in failing to ascertain that the signatures did not match. This case is analogous to *Canfield*, in which our sister court affirmed the bank's motion for summary judgment because there was no evidence that the bank had paid forged checks while knowing them to be forged or with willful disregard in failing to ascertain the forgeries. *Id.* at 837–38.

Hames cites *La Sara Grain Co.*, in which the Texas Supreme Court held that the trial evidence supported the district court's finding that a bank had not acted in good faith when it paid a corporation's checks despite knowing that the checks contained fewer than the required number of signatures. 673 S.W.2d at 563. In support of its holding, the supreme court cited evidence that (i) the corporation's resolution requiring two signatures was in the bank's files, (ii) the

corporation's signature card had "obviously" been altered from a dual to a single-signature requirement, and (iii) many of the checks in question were deposited in the personal account of the individual who had signed the checks. *Id.* Unlike *La Sara*, this case lacks record evidence from which reasonable and fair-minded people could infer that Chase knew that the purported Stovall signature on the November 2011 signature card was actually a forgery.

In conclusion, we hold that summary judgment was appropriate with respect to Hames's conversion claim. We overrule Hames's fourth issue.

## CONCLUSION

The trial court did not err in rendering summary judgment against Hames. We therefore affirm the judgment of the trial court.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

160472F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBBIE LESA HAMES HORTON,
Appellant

No. 05-16-00472-CV      V.

JP MORGAN CHASE BANK, N.A., AND
KIMBERLY A. STOVALL, Appellees

On Appeal from the County Court at Law
No. 5, Dallas County, Texas
Trial Court Cause No. CC-14-01162-E.
Opinion delivered by Justice Boatright.
Justices Lang-Miers and Brown
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JP MORGAN CHASE BANK, N.A. recover its costs of this appeal from appellant ROBBIE LESA HAMES HORTON.

Judgment entered this 22nd day of January, 2018.